UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HENRI MAALOUF, et al.,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**ISLAMIC REPUBLIC OF IRAN, et al.,**<br><br>    Defendants. | Civil Action No. 16-0280 (JDB) |
| **KENNETH MARK SALAZAR, et al.,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**ISLAMIC REPUBLIC OF IRAN,**<br><br>    Defendant. | Civil Action No. 16-1507 (JDB) |

**MEMORANDUM OPINION**

Before the Court are two cases arising out of the terrorist attacks on the United States Embassy in Beirut, Lebanon, on April 18, 1983, and September 20, 1984. Plaintiffs are relatives of individuals who died as a result of the terrorist attacks. They bring these actions against the Islamic Republic of Iran seeking compensatory damages for wrongful death, solatium, and intentional infliction of emotional distress. Henri Maalouf and the estates of his parents and sister also sue the Iranian Ministry of Information and Society ("MOIS") and seek punitive damages in addition to compensation.

Plaintiffs do not write on a blank slate. In each case, their complaints point to a previous default judgment against Iran and an award of damages to similarly situated relatives. See Am. Compl. [Maalouf ECF No. 13] ¶¶ 1–5; Compl. [Salazar ECF No. 1] ¶¶ 2–3, 7–8; see generally Estate

1

of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1 (D.D.C. 2011); Salazar v. Islamic Republic of Iran ("Salazar I"), 370 F. Supp. 2d 105 (D.D.C. 2005). Plaintiffs argue that these judgments and damages awards should provide a ready model for resolving the cases presently at bar.

Although the tragic events giving rise to the present suits are grievously weighty and the damages sought substantial, the task for the Court is straightforward. The Court will first review the posture of these two cases as well as its previous findings of facts and legal rulings—"specifically, its findings that Iran and MOIS were indeed responsible for supporting, funding, and otherwise carrying out the unconscionable attack[s]." Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105, 108 (D.D.C. 2003). Taking judicial notice of these findings of fact and following its previous legal rulings, the Court will then turn to the submissions from each set of plaintiffs and evaluate whether these plaintiffs too are legally entitled to compensation. Finally, the Court will set forth its legal and remedial conclusions for the two sets of plaintiffs.

The Court concludes that the Salazar plaintiffs are entitled to compensatory damages totaling $10 million. The Maalouf plaintiffs, on the other hand, do not specify the state or foreign law upon which their causes of action are based, and thus will be given a chance to amend their complaint.

### BACKGROUND

On April 18, 1983, a car bomb exploded at the U.S. embassy in Beirut, Lebanon, killing at least fifty-two people and injuring more than thirty-four others. Doe, 808 F. Supp. 2d at 7. "The bombing was the first large-scale attack against a United States Embassy anywhere in the world," and although responsibility for the bombing was not immediately apparent, the U.S. State Department determined by 1984 that the Lebanese Shi'a group Hizbollah had perpetrated the attack with support and encouragement from Iran. Dammarell, 281 F. Supp. 2d at 111–12. On January 19, 1984, President Reagan "designated Iran a state sponsor of terrorism" in response to its role in

sponsoring several terrorist attacks in Lebanon, including the April 18, 1983 bombing. Id. at 113. Later that year, on September 20, 1984, a second bomb exploded at the U.S. embassy annex in East Beirut, killing at least eleven people and injuring over fifty. Doe, 808 F. Supp. 2d at 7.

Since that time, a number of plaintiffs have filed cases in this District on behalf of bombing victims and their families. Relying on the "terrorism exception" embedded in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–11, these plaintiffs alleged that because Iran and its agents provided material support to Hizbollah in organizing and executing these attacks, Iran was liable for compensatory and punitive damages. In a series of prior rulings, this Court has agreed and found Iran and its agents liable for wrongful death, loss of solatium, battery, intentional infliction of emotional distress, and other forms of economic damages arising out of the Beirut Embassy bombings. See, e.g., Doe, 808 F. Supp. 2d at 21–23; Salazar I, 370 F. Supp. 2d at 113–15; Dammarell, 281 F. Supp. 2d at 192–99.

Of these prior rulings, Doe and Salazar I provide the basis for plaintiffs' present claims. In each case, although properly served by the plaintiffs, Iran never appeared in this Court. Doe, 808 F. Supp. 2d at 13; Salazar I, 370 F. Supp. 2d at 108. Following ex parte hearings under 28 U.S.C. § 1608(e), the Court concluded that Iran was not immune from suit in either case and that Iran was liable to the victims of the 1983 and 1984 bombings. Doe, 808 F. Supp. 2d at 23–24; Salazar I, 370 F. Supp. 2d at 117. The Court entered final judgments in Salazar I in May 2005 and in Doe in May 2013, awarding a total of $18.3 million in compensatory damages in the former and over $8.4 billion in compensatory and punitive damages in the latter. See Estate of Doe v. Islamic Republic of Iran, 943 F. Supp. 2d 180, 183–84 (D.D.C. 2013); Order, Salazar I, No. 1:02-cv-0558 [ECF No. 27]. Iran never appeared in Court to appeal these judgments.

The two present cases are nearly identical to Doe and Salazar, but are brought by different

3

family members of each bombing victim. Plaintiff Henri Maalouf, a Lebanese citizen, is the older brother of Edward Maalouf, a security guard killed in the embassy annex bombing in 1984. Maalouf Am. Compl. ¶ 9; see also Decl. of Pl. Henri Maalouf ("Maalouf Decl.") [Maalouf ECF No. 31-1] ¶¶ 1, 5, 9. Henri was unaware of the Doe litigation because he had lost contact with his family in Lebanon after moving to London. Maalouf Decl. ¶¶ 50–53. He became aware of the lawsuit in July 2015, when traveling to Lebanon to visit his ailing sister. Id. ¶ 53. In light of the previous Doe litigation, he and the estates of his sister Gaby and his parents sue Iran and the MOIS for causing Edward's death, for loss of solatium, and for intentional infliction of emotional distress. Maalouf Am. Compl. ¶¶ 4, 10–12, 28–40.

Plaintiffs Kenneth and Kevin Salazar are the twin sons of Mark Salazar, a U.S. staff sergeant killed in the 1983 embassy bombing. Salazar Compl. [Salazar ECF No. 1] ¶ 11. They were unaware of the previous Salazar suit and allege that Donna Salazar, the plaintiff in that suit, claimed that she was Mark's widow when the two were not legally married and that she did not inform Kenneth and Kevin of her case. Id. ¶¶ 3–7. Kenneth and Kevin now sue Iran for causing Mark's death and for intentional infliction of emotional distress. Id. ¶¶ 26–33.

As in previous cases, Iran has never appeared in this Court, and the Clerk of this Court has entered default against defendants in both cases. See Default [Maalouf ECF No. 30] at 1; Default [Salazar ECF No. 8] at 1. Plaintiffs filed default judgment motions against defendants in both suits. Pls.' Mot. for Default J. [Maalouf ECF No. 31] at 1; Pls.' Mot. for Default J. [Salazar ECF No. 13] at 1. On March 30, 2018, this Court set aside the defaults and dismissed plaintiffs' claims as untimely. Maalouf v. Islamic Republic of Iran, 306 F. Supp. 3d 203, 213 (D.D.C. 2018). The D.C. Circuit reversed, holding that this Court "lack[ed] authority to sua sponte raise a forfeited statute of limitations defense in an FSIA terrorism exception case, at least where the defendant sovereign fails

4

to appear." Maalouf v. Islamic Republic of Iran, 923 F.3d 1095, 1101 (D.C. Cir. 2019). Plaintiffs' motions for default judgment are thus once more before this Court and ripe for consideration.

**LEGAL STANDARD**

The FSIA, 28 U.S.C. §§ 1602–1611, is the "sole basis for obtaining jurisdiction over a foreign state in the United States." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). While foreign states are generally immune from the jurisdiction of U.S. courts, see 28 U.S.C. § 1604, the FSIA provides for federal court jurisdiction over foreign entities in a limited set of circumstances and based on a set procedure. Subject matter jurisdiction exists if the defendant's conduct falls within one of the specific statutory exceptions to immunity. See id. §§ 1330(a), 1604. And a federal court can obtain personal jurisdiction over a foreign-state defendant if the plaintiff properly serves the defendant in accordance with 28 U.S.C. § 1608. See id. § 1330(b).

At play here is the "state sponsor of terrorism" exception set forth in 28 U.S.C. § 1605A. That exception affords subject matter jurisdiction in cases where "money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act" when such actions are taken "by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency." Id. § 1605A(a)(1).

Section 1605A(c) establishes a federal cause of action for victims of terrorism and their families to seek damages from "state sponsors of terrorism that took part in [the] attack[s] or materially supported the perpetrators." See Maalouf, 923 F.3d at 1101–02. In order for a district court to enter default judgment against a foreign state, "the claimant [must] establish[] his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e); cf. Fed. R. Civ. P. 55(d) (setting out the standard for entering default judgment against the United States). "The district

5

court . . . has an unusual degree of discretion over evidentiary rulings in a FSIA case against a defaulting state sponsor of terrorism," and "only where the court relies upon evidence that is both clearly inadmissible and essential to the outcome has it abused its discretion." Owens v. Republic of Sudan, 864 F.3d 751, 785–86 (D.C. Cir. 2017).

## ANALYSIS

### I. Jurisdiction

This Court has jurisdiction over these two cases because service was properly effected on Iran (and, for the Maalouf plaintiffs, on the MOIS) and defendants' conduct falls within the "state sponsor of terrorism" exception established in § 1605A.

"A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1). Section 1608(a) lays out four methods, in descending order of preference, for serving a foreign state, and plaintiffs must attempt service by a more preferred method, or conclude that such a method is impracticable, before proceeding to the next method. See Doe, 808 F. Supp. 2d at 12. The first two methods are inapplicable in these cases because no "special arrangement for service" exists between the United States and Iran, 28 U.S.C. § 1608(a)(1), and Iran is not a party to any "international convention on service of judicial documents," id. § 1608(a)(2). Aceto v. Islamic Republic of Iran, No. CV 19-464 (BAH), 2020 WL 619925, at *14 (D.D.C. Feb. 7, 2020). Plaintiffs also reasonably concluded that service by mail on Iran and its agencies under 28 U.S.C. § 1608(a)(3) "would be futile" as it is "known to be ineffective." Aff. Requesting Foreign Mailing [Maalouf ECF No. 4] at 1; Aff. Requesting Foreign Service [Salazar ECF No. 5] at 1.

Plaintiffs thus resorted to the fourth method of service: sending their papers via diplomatic channels to Iran. See 28 U.S.C. § 1608(a)(4). On February 18, 2016, and August 22, 2016, plaintiffs

6

in Maalouf and Salazar, respectively, requested the Clerk of the Court to transmit the proper documents to the U.S. Department of State for diplomatic service under § 1608(a)(4). Maalouf Aff. Requesting Foreign Mailing at 1–2; Salazar Aff. Requesting Foreign Mailing at 1–2. On June 28, 2016, and February 1, 2017, respectively, the U.S. Department of State informed the Court that service had been properly effected on the defendants. Return of Service [Maalouf ECF No. 11] at 1; Return of Service [Salazar ECF No. 6] at 1. When defendants did not respond or make an appearance within sixty days, the Clerk entered defaults under § 1608(d). See Maalouf Default at 1; Salazar Default at 1.

Plaintiffs have also established that Iran qualifies under the "state sponsor of terrorism" exception set forth in § 1605A. In order to fall under the exception, the foreign state must have been "designated as a state sponsor of terrorism at the time" of the terrorist attack or "so designated as a result of [the] act" and remain so designated at the time of the lawsuit. 28 U.S.C. § 1605A(a)(2)(A)(i)(I). The claimant or victim must also have been either a U.S. national, a member of the armed services, or "otherwise an employee of the Government of the United States" or a government contractor, at the time of the tortious act. Id. § 1605A(a)(2)(A)(ii).

As noted above, "Iran was formally declared a 'state sponsor of terrorism' on January 19, 1984, by U.S. Secretary of State George P. Schultz . . . , and remains designated as a state sponsor of terrorism." Doe, 808 F. Supp. 2d at 13–14. Plaintiffs also satisfy the citizenship requirements of § 1605A(a)(2)(A)(ii) because, at the time of the attacks, all plaintiffs either were themselves American citizens, as with Kenneth and Kevin Salazar, see Salazar I, 370 F. Supp. 2d at 113, or were related to a U.S. Government employee, as with Henri Maalouf and his other family members, see Doe, 808 F. Supp. 2d at 13. Finally, the deaths of Sgt. Salazar and Edward Maalouf, on which the plaintiffs' claims are based, have both previously been found to qualify as "extrajudicial killing[s]"

7

for which Iran or its agents provided material support, as required by § 1605A(a)(1). See Salazar I, 370 F. Supp. 2d at 113; Doe, 808 F. Supp. 2d at 13–16.

In sum, this Court has subject matter and personal jurisdiction under the FSIA because service on defendants was proper and the cases satisfy the other technical requirements for the "state sponsor of terrorism" exception of § 1605A.

## II. Iran's Liability for the Beirut Embassy Bombings

With jurisdiction established, the Court turns to plaintiffs' causes of action and Iran's liability for the Beirut Embassy bombings. "[L]iability in a default judgment case is established by the same evidence [used to establish jurisdiction] if 'satisfactory to the [c]ourt.'" Doe, 808 F. Supp. 2d at 17–18 (quoting 28 U.S.C. § 1608(e)). As discussed above, much of the same evidence that established Iran's liability in previous cases will again serve as the basis for evaluating liability here.

### a. Salazar Plaintiffs' Claims

The Court begins with the claims brought by Kenneth Salazar and Kevin Salazar, the twin sons of the late Staff Sergeant Mark Eugene Salazar. Their suit represents the second instance where survivors of Sgt. Salazar have sought compensation for the suffering and hardship that resulted from his death in the 1983 bombing. See Salazar I, 370 F. Supp. 2d at 107–09; see also Maalouf, 923 F.3d at 1105–06. In the first suit, Donna Salazar sued Iran and its agents on behalf of herself and her daughter Jennifer Salazar, raising claims of wrongful death, intentional infliction of emotional distress, and solatium. Salazar I, 370 F. Supp. 2d at 114–15. The Court concluded that the Iranian defendants were "liable to [Donna] for causing the wrong death of her husband" and "for intentional infliction of emotional distress." Id. Although Donna's claim for solatium did not provide an independent basis for suit, the Court also observed that, under Illinois law on which her suit was based, "she [could] obtain the equivalent of solatium damages through her other causes of action."

Id. at 115.

The present plaintiffs, Kenneth and Kevin Salazar, bring two claims: wrongful death under the private cause of action afforded by 28 U.S.C. § 1605A(c) and intentional infliction of emotional distress. Salazar Compl. ¶¶ 26–33. Section 1605A(c) creates a cause of action "for personal injury or death caused by . . . a foreign state['s]" tortious acts and affords recovery for "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). Courts in this District have recognized both wrongful death and intentional infliction of emotional distress as giving rise to liability under § 1605A(c), see, e.g., Reed v. Islamic Republic of Iran, 845 F. Supp. 2d 204, 212 (D.D.C. 2012) ("An act that would otherwise constitute [intentional infliction of emotional distress] gives rise to liability under the FSIA."), and the Court finds these interpretations of the FSIA persuasive here.

The Salazar brothers "may pursue section 1605A(c)'s private right of action as they are [both] United States citizens." Estate of Hirshfeld v. Islamic Republic of Iran, 330 F. Supp. 3d 107, 137 (D.D.C. 2018); see also 28 U.S.C. § 1605A(c)(1). But the FSIA does not provide the substantive basis for their claims. See Hirshfeld, 330 F. Supp. 3d at 137–38. A federal district court is not to articulate legal theories and elaborate "federal common law," but is to "rely on well-established principles of law, such as those found in Restatement (Second) of Torts and other leading treatises, as well as those principles that have been adopted by the majority of state jurisdictions to outline the boundaries of [plaintiffs'] theories of recovery." Oveissi v. Islamic Republic of Iran ("Oveissi II"), 879 F. Supp. 2d 44, 54 (D.D.C. 2012) (internal quotation marks omitted). The Court thus evaluates each of the Salazar plaintiffs' two claims under such "well-established principles of law." Id.

They first bring a wrongful death claim, seeking "compensatory damages . . . for pain and suffering" stemming from the death of their father, Sgt. Salazar. Compl. ¶ 30. "Any deaths resulting

9

from an act of terrorism under section 1605A are properly considered wrongful deaths." Doe v. Democratic People's Republic of Korea Ministry of Foreign Affairs Jungsong-Dong, No. 18-cv-0252 (DLF), 2019 WL 5597740, *12 (D.D.C. Oct. 22, 2019) (alternations omitted) (quoting Shoham v. Islamic Republic of Iran, No. 12-cv-508 (RCL), 2017 WL 2399454, at *18 (D.D.C. June 1, 2017)). But Kenneth and Kevin Salazar are oddly positioned to bring such a claim. The FSIA permits wrongful-death actions to be brought on behalf of the estate of the decedent for the economic losses resulting from the decedent's untimely death. See Lelchook v. Syrian Arab Republic, Civil Action No.: 16-1500 (RC), 2019 WL 4673849, at *3 (D.D.C. Sept. 25, 2019). In Salazar I, for instance, Donna Salazar brought a claim for wrongful death in her capacity as administrator of Sgt. Salazar's estate. See Am. Compl. for Damages Pursuant to the Foreign Sovereign Immunities Act, Salazar v. Islamic Republic of Iran, Civil Action No. 1:02CV00558 [ECF No. 21] at 6.

Here, by contrast, the plaintiffs bring the claim on behalf of themselves to compensate for their pain and suffering. Salazar Compl. ¶¶ 26–30. Although compensatory damages "for the emotional anguish of [a decedent's] surviving kin" have been considered under a wrongful-death framework by some courts, see, e.g., Wagner v. Islamic Republic of Iran, 172 F. Supp. 2d 128, 134–37 (D.D.C. 2001), the Court finds these claims overlap with plaintiffs' claim for intentional infliction of emotional distress and are more easily considered through that cause of action. See also Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 77 (D.D.C. 2010) ("The Court notes that these plaintiffs who have claimed assault, battery, and [intentional infliction of emotional distress] may recover under only one of any such theories, as multiple recovery is prohibited.").

The Court thus turns to plaintiffs' second claim, for intentional infliction of emotional distress. Under the Restatement, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional

10

distress, and if bodily harm to the other results from it, for such bodily harm." Heiser v. Islamic Republic of Iran, 659 F. Supp. 2d 20, 26 (D.D.C. 2009) (citing Restatement (Second) of Torts § 46(1)). "The scope of recovery under this theory is limited by two qualifications: the plaintiff must be 'a member of [the injured person's] immediate family' and must be 'present at the time.'" Oveissi II, 879 F. Supp. 2d at 54 (quoting Restatement (Second) of Torts § 46(2)(a)–(b)).

Kenneth and Kevin Salazar satisfy each of these requirements. In the previous Salazar lawsuit, brought under Illinois law, the Court concluded that "[t]he uncontroverted evidence at trial was that Sgt. Salazar's killing resulted in severe emotional trauma to [Donna and Katherine Salazar]. Defendants intentionally caused these injuries, in fact and proximately, by planning, supplying, and supporting the Embassy bombing in which Sgt. Salazar was killed." Salazar I, 370 F. Supp. 2d at 115. Like Sgt. Salazar's daughter Katherine, Kenneth and Kevin are both members of Sgt. Salazar's immediate family. See Attach. C. to Pls.' Mot. for Default J. ("Birth Certificates") [ECF No. 13-3] at 2–3. Like Katherine, they also experienced significant hardship as a result of Sgt. Salazar's absence and have struggled without his support in their lives. Decl. of Kenneth Mark Salazar ("Kenneth Decl.") [ECF No. 13-5] ¶¶ 7–14; Decl. of Kevin Michael Salazar ("Kevin Decl.") [ECF No. 13-6] ¶¶ 7–13. And while the claimant often must be present at the time of the tortious event, see Oveissi II, 879 F. Supp. 2d at 54, "[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families." Salazar I, 370 F. Supp. 2d at 115. Thus, the Salazar plaintiffs may recover against Iran for intentional infliction of emotional distress.

### b. Maalouf Plaintiffs' Claims

The Maalouf plaintiffs sue Iran and the MOIS for loss of solatium and intentional infliction of emotional distress. Maalouf Am. Compl. ¶¶ 34–40. They also assert a cause of action for Edward

11

Maalouf's wrongful death under § 1605A(c). Maalouf Am. Compl. ¶¶ 28–33. Unlike Kenneth and Kevin Salazar, none of the Maalouf plaintiffs is a U.S. national or otherwise satisfies that subsection's citizenship requirement. See 28 U.S.C. § 1605A(c). Although Edward's status as a contractor satisfies the statutory requirement for jurisdiction, see id. § 1605A(a)(2)(A)(ii), the federal cause of action is limited to claimants who are themselves citizens, members of the armed forces, government contractors, or the legal representatives thereof, id. § 1605A(c). The Maalouf plaintiffs do not satisfy this requirement, and they thus cannot rely on the federal cause of action provided by § 1605A(c). See Doe, 808 F. Supp. 2d at 20 ("[T]hose plaintiffs who are foreign national family members of victims of the terrorist attacks in Beirut lack a federal cause of action."). While these plaintiffs can rely on "applicable state and/or foreign law" when bringing a claim under the FSIA, id., they do not specify in their complaint or otherwise "a particular cause of action arising out of a specific source of law" other than the FSIA, Dammarell v. Islamic Republic of Iran, No. Civ.A. 01-224JDB, 2005 WL 756090, *2 (D.D.C. Mar. 29, 2005) (internal quotation marks omitted).

Plaintiffs suggest that, "[a]s members of [Edward's] immediate family, his parents and siblings . . . are entitled to bring this action in their own names and on their own behalves" under § 1605A(c), Maalouf Pls.' Mot. for Default J. at 4, but this argument is incorrect, see Doe, 808 F. Supp. 2d at 20. Still, this Court will afford plaintiffs an opportunity to amend their complaint to plead state or foreign causes of action against Iran and the MOIS with the necessary detail under the law. See Dammarell, 2005 WL 756090, at *2.

**III. Damages**

"To obtain damages against a non-immune foreign state under the FSIA, a plaintiff must prove that the consequences of the foreign state's conduct were '"reasonably certain" (i.e., more likely than not) to occur, and must prove the amount of damages by a "reasonable estimate"

consistent with this [Circuit]'s application of the American rule on damages.'" Salazar I, 370 F. Supp. 2d at 115–16 (quoting Hill v. Republic of Iraq, 328 F.3d 680, 681 (D.C. Cir. 2003)). As this Court concluded in Salazar I, "it was reasonably certain that Sgt. Salazar's death and the attendant suffering of his family would occur given defendant[']s actions." Id. at 116. Plaintiffs do not seek any compensatory damages for Sgt. Salazar's lost salary, potential earnings, or the costs associated with his funeral. Instead, Kenneth and Kevin each seek compensatory damages for intentional infliction of emotional distress. See Salazar Compl. ¶¶ 31–33.

This Court appointed a special master "for the administration of the compensatory damages claims" of the Salazar plaintiffs. Order Appointing Special Masters [Salazar ECF No. 24] at 3. The special master "received evidence with regard to all issues of compensatory damages," and in line with this Court's decision in Valore v. Islamic Republic of Iran, has recommended that $5 million is the "appropriate monetary compensation" for each brother. R. & R. of Special Master [Salazar ECF No. 27] at 2, 9–10; see also Valore, 700 F. Supp. 2d at 85–87 (outlining factors to be considered in calculating damages for claims of solatium and/or intentional infliction of emotional distress). This award is also consistent with the award of $5 million to Katherine, Sgt. Salazar's daughter. See Salazar I, 370 F. Supp. 2d at 116.

\* \* \*

Finally, plaintiffs seek compensation for the costs of this suit, "including reasonable attorneys' fees, as well as pre-judgment interest and such other relief as the Court shall [deem] just and equitable." Maalouf Am. Compl. at 8; Salazar Compl. at 6. "[B]ecause the plaintiffs have not provided any information regarding the fees and costs sought, the request is denied without prejudice." Aceto, 2020 WL 619925, at *23. But "plaintiffs may file post-judgment motions for attorneys' fees in accordance with Federal Rule of Civil Procedure 54(d)(2)(B) and for costs in

accordance with Federal Rule of Civil Procedure 54(d)(1)." Aceto, 2020 WL 619925, at *23. The Court also refrains from awarding prejudgment interest because the compensatory awards for each Salazar plaintiff "represent the appropriate level of compensation, regardless of the timing of the attack." See Oveissi v. Islamic Republic of Iran ("Oveissi I"), 768 F. Supp. 2d 16, 30 n.12 (D.D.C. 2011); see also Oveissi II, 879 F. Supp. 2d at 59 (gathering cases wherein prejudgment interest was denied).

## CONCLUSION

For the foregoing reasons, the Court concludes that the Maalouf plaintiffs have stated valid causes of action under state and/or foreign law, but that their amended complaint must be further amended to provide greater specificity of the legal basis for their claims. The Court also concludes that the Salazar plaintiffs have demonstrated significant loss as a result of Iran's deliberate and extreme conduct. Because the evidence in the record and this Court's prior decisions amply support the allegations in their complaint, judgment will be entered for the Salazar plaintiffs on their intentional infliction of emotional distress claim and compensatory damages of $10 million—$5 million for each brother—will be awarded. A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: February 18, 2020